UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEPHANIE J. MARSHALL,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Respondent.

Case No. C11-1236-JCC-BAT

**REPORT AND RECOMMENDATION**

Stephanie J. Marshall seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ improperly (1) rejected the opinions of examining doctor Robert Parker, Ph.D., (2) discounted the testimony of her husband; (3) assessed her credibility; (4) assessed her residual functional capacity; and (5) failed to adequately develop the record. Dkt. 12 at 1. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further proceedings.

## BACKGROUND

Ms. Marshall is currently 48 years old, has completed the 12th grade, and has worked manual labor jobs at various companies for the last 15 years.[1] She last worked on May 31, 2008. Tr. 92. On December 3, 2008, she filed applications for disability insurance benefits, and

---

[1] Tr. 92-93, 95.

REPORT AND RECOMMENDATION - 1

supplemental security income. Tr. 11. Her applications were denied initially and on reconsideration. At the hearing the ALJ conducted on June 29, 2010, Ms. Marshall amended her onset date from January 1, 2003, to December 3, 2008. *Id.* On July 29, 2010, the ALJ issued a decision finding Ms. Marshall not disabled. As the Appeals Council denied Ms. Marshall's request for review, the ALJ's decision is the Commissioner's final decision.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

**Step one:** Ms. Marshall had not worked since December 3, 2008.

**Step two:** Ms. Marshall had the following severe impairments: a depressive disorder and substance abuse disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual functional capacity:** Ms. Marshall could perform a full range of work at all exertional levels but with the following non-exertional limitations: she could adequately perform the mental activities generally required by competitive, remunerative, unskilled work as follows: understand, remember, and carry out simple 2 to 3 step instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work, and also some jobs at the SVP 3 and 4 semi-skilled level of work. She had the average ability to perform sustained work activities (maintaining attention, concentration, persistence and pace) in an ordinary work setting on a regular and continuous basis (8 hours a day, 5 days a week, or equivalent work schedule) within the customary tolerances of employers' rules regarding sick leave and absences. She could make judgments on simple work-related decisions necessary to perform work at the unskilled level; respond appropriately to supervision and co-workers; and deal with changes all within a stable work environment.

**Step four:** Ms. Marshall was capable of performing past relevant work as a survey worker.

**Step five:** Alternatively, as there are other jobs that Ms. Marshall could perform, Ms. Marshall is not disabled.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Tr. 13-19.

## DISCUSSION

**A.     The ALJ's evaluation of Dr. Robert Parker, Ph.D.**

Ms. Marshall contends the ALJ failed to give sufficient reasons to reject the opinions of examining doctor Robert Parker, Ph.D., rendered in a Washington State Department of Social and Health Services (DSHS) psychological evaluation he performed on November 17, 2008. Dkt. 12 at 2. In this evaluation, Dr. Parker diagnosed Ms. Marshall with "Bipolar Type II depressed w/ psychotic features, PTSD, Cognitive disorder NOS; alcohol dependence in sustained remission." Tr. 341. He opined the severity of Ms. Marshall's depressed mood and global illness was severe, and that her expression of anger, social withdrawal, verbal expression of fear or anxiety, and thought disorder were marked. *Id*. He further opined Ms. Marshall had marked limitations in her ability to learn new tasks, perform routine tasks, interact appropriately in the public contacts, and to control her physical movements and maintain appropriate behavior. Tr. 342. He opined she had severe limitations in her ability to relate appropriately with co-workers and supervisors and to respond to and tolerate the normal pressures of a work setting. *Id.*

The ALJ rejected Dr. Parker's opinions on the grounds the doctor used a "check-box form," the "mental status report[ ] indicated that she was functional," and because in reports generated before Dr. Parker's evaluation, Ms. Marshall reported improved functioning and a sense of well being when she was clean and sober. Tr. 17. The ALJ noted while the reports generated before Dr. Parker's evaluation pertained to Ms. Marshall's condition before the alleged onset date and thus were not particularly relevant, they nonetheless showed "the claimant was able to function pretty well when she remained abstinent from substance abuse." *Id.*

These are not sufficient reasons to reject Dr. Parker's opinions. The use of a "check-box form," alone, is not grounds to reject the doctor's opinions. Medical opinions contained in check-box forms are a common feature of social security disability cases. Sometimes the Commissioner relies on opinions in "check-box forms" to reject a claimant's application, and sometimes not. As such, simply noting a doctor used a "check-box form" provides no measure of what weight the opinion contained therein should be given. Certainly, in some cases an ALJ may properly discount a doctor's opinion where the doctor's opinions are brief, conclusory, and inadequately supported by medical records. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). But as the ALJ neither discussed nor relied upon these reasons in rejecting Dr. Parker's opinions, neither can the Court. *Bray v. Comm'r of Soc. Sec Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).

The importance of focusing on the grounds relied upon by the ALJ in affirming or reversing the ALJ cannot be overemphasized. It is not for the Court to interpose reasons not mentioned or relied upon by the ALJ. For this reason, the Court cannot accept the Commissioner's argument the ALJ properly rejected Dr. Parker's opinions on the grounds they were contradicted by the opinions of Dr. Wayne Dees, Psy.D., who also examined Ms. Marshall. Dkt. 14 at 10. The ALJ made no mention that this was a ground upon which he was relying to reject Dr. Parker's opinions. The Commissioner's argument is thus an improper post-hoc rationalization the Court cannot rely on.

The ALJ also erred in rejecting Dr. Parker's opinions on the grounds the "mental status report[ ] indicated that she was functional." An ALJ may reject an uncontradicted examining doctor's opinion for "clear and convincing reasons" or "specific or legitimate reasons" where contradicted. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1996). An ALJ does this by setting

out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Here, the ALJ gave no explanation as to what "functional" meant or how he arrived at that finding. This failure is problematic as Dr. Parker's mental status examination showed Ms. Marshall had functional limitations. In the mental status examination, Dr. Parker opined Ms. Marshall's mood was depressed, angry, and irritable; that her sleep was erratic; that she had decreased appetite, lethargic motor skills, episodic anger and irritability that was moderate in severity; that she had passing thoughts of suicide, auditory hallucinations, poor fund of knowledge, poor ability to perform 3-step commands, and poor delayed recall. The doctor further opined Ms. Marshall had logical, appropriate and responsive thoughts, could identify two objects, normal language, judgment, orientation, attention and immediate recall. Tr. 345. Dr. Parker also administered a "Trails A and B" test which the doctor indicated suggested cognitive impairment, and the need for IQ testing. Tr. 347. The doctor's mental status examination thus indicates Ms. Marshall functioning was not normal. Given these opinions and test results, and the ALJ's failure to explain why the examination showed Ms. Marshall was "functional," or what "functional" meant, the Court concludes the ALJ erred.

And finally, the ALJ erred in rejecting Dr. Parker's opinions on the grounds that "the claimant was able to function pretty well when she remained abstinent from substance abuse." Tr. 17. First, as the ALJ noted, the reports that indicated Ms. Marshall functioned pretty well

when not using drugs are "not particularly relevant to the issues present in this case" as they pertain to Ms. Marshall's condition before the alleged onset date. Tr. 17. And second, the ALJ's rejection of Dr. Parker's opinions on the grounds that substance abuse was a major consideration required the ALJ to utilize the Commissioner's regulations and the two-step analysis as set forth by the law of this Circuit, something the ALJ failed to do here.

Under the law of this Circuit, an ALJ must apply a specific two-step inquiry in analyzing substance abuse in a disability determination. *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001). In *Bustamante*, the ALJ found Bustamante's limitations were a result of alcohol abuse, that alcohol abuse was his primary impairment, and that it did "not reach a disabling level of severity." *Id.* at 952. The Court of Appeals reversed, holding "[t]he ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of Bustamante's alcoholism on his other mental impairments. If, and only if, the ALJ found Bustamante was disabled under the five-step inquiry, should the ALJ have evaluated whether Bustamante would still be disabled if he stopped using alcohol." *Id.* at 955. The Court of Appeals remanded, "with instructions that the ALJ proceed with step three (and four and five, if necessary) of the disability determination without attempting to separate out the impact of Bustamante's alcohol abuse." *Id.* at 956. The Court instructed the ALJ to consider whether "alcohol is a contributing factor material to" disability only if the ALJ found Bustamante disabled. *Id.*

The law of the Circuit tracks the Commissioner's own regulations. Under the Commissioner's regulations, the ALJ must follow a specific analysis that incorporates the five-step sequential evaluation. 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ first must conduct the five-step inquiry without attempting to determine the impact of a substance abuse disorder. If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not

entitled to benefits, and there is no need to proceed with further analysis. *Id*. If the ALJ finds the claimant disabled, and there is evidence of substance abuse, the ALJ should proceed under the sequential evaluation and §§ 404.1535 or 416.935 to determine if the claimant would still be disabled absent the substance abuse. If found disabled with the effects of substance abuse, the claimant has the burden in steps one through four of the second sequential evaluation process to prove drug or alcohol abuse is not a contributing factor material to his disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

In this case, rather than conducting the five-step inquiry **without** determining the impact of substance abuse, the ALJ considered the impact of substance abuse in rejecting Dr. Parker's opinions, and in concluding Ms. Marshall was not disabled at steps four and five. In other words, rather than conducting the required specific two-step inquiry, the ALJ erred by improperly lumping the impact of substance abuse into a single inquiry.

In sum, the Court concludes that as none of the reasons the ALJ gave to reject Dr. Parker's opinions are supported by substantial evidence, the ALJ erred. The Court further concludes this error was not harmless. The ALJ noted Dr. Parker's opinions were among the opinions which "suggested that the claimant was disabled." Tr. 17. Consequently, the Court cannot confidently conclude that no reasonable ALJ, when not making the same error as the ALJ, could have reached a different disability determination and the matter should thus be remanded for further proceedings. *Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

**B.     The ALJ's assessment of Ms. Marshall's credibility**

Ms. Marshall argues the ALJ erred in finding her not fully credible. Dkt. 12 at 16. The ALJ did not find that Ms. Marshall was malingering. Thus, the ALJ was required to provide

clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

In this case, the ALJ noted:

> the claimant reported that she seldom leaves her room and remains in bed (exhibit 13F:27, 32), which is untrue. The claimant testified that she went to church frequently, sometimes performing as an usher showing people to their seats, and other tasks. She attended weekly bible study; she told Dr. Dees that she went to church twice a week . . . and other providers that she might attend aerobic classes. . she does some household chores such as meals and runs errands . . . and she went camping and swimming with other church people.

Tr. 18. While an ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations, the ALJ may rely on contradictions between a claimant's reported activities and her asserted limitations in assessing a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, the ALJ properly relied on the conflict between Ms. Marshall's testimony she was essentially bedridden, and other evidence that showed she was not, to discount her testimony.

The ALJ also found Ms. Marshall not fully credible on the grounds she "shoplifted from stores when money was tight" and that in order to obtain a bed at a shelter, she lied that her husband had drugs problems. Tr. 18. An ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ thus properly discounted Ms. Marshall's credibility based on her admission she lied to gain a shelter bed and that she stole from stores. Ms. Marshall argues

that lying once to get shelter-bed is not probative of her reputation for truthfulness. However, coupled with her admission that she also shoplifted, the Court cannot say the ALJ's finding was unreasonable or unsupported. To be sure, the ALJ's finding is debatable but when the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Accordingly, as the ALJ's evaluation of Ms. Marshall's testimony is supported by substantial evidence, the Court will not disturb the ALJ's finding that Ms. Marshall's testimony is not fully credible.

**C.     The ALJ's evaluation of Melvin Marshall's testimony**

Ms. Marshall contends "the ALJ purported to accept Mr. Marshall's testimony" but then erred by failing "to account for the limitations identified by Mr. Marshall in his residual functional capacity [RFC] finding." Dkt. 12 at 10. Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d at 1053. Here, the ALJ found Mr. Marshall:

> Reported in May 2010 that she had some sleep disturbance, and she spent much of the time lying around and doing nothing. She was often irritable. He said they attended church twice a week . . . Those statements are consistent with the claimant's self-reports. At the hearing, the claimant's husband testified that the claimant slept all day long, a statement that supported the claimant's testimony. He added, however, that she watched TV all night long. There were issues of substance abuse; he stated that she was irritable, had mood swings, and was threatening at times. He said that he helped with household tasks (his wife did nothing). While that may be so, her inactivity is not due to any physical or mental impairment supported by the record. The claimant's husband said that she is inconsistent in her reporting to her doctors, and that she

remained social with church activities. All in all, Mr. Marshall's reports are fairly credible.

Tr. 18. The Commissioner contends that "the ALJ's interpretation of Mr. Marshall's testimony was rational" and is thus entitled to deference. The Court cannot accept this contention because it is unclear how the ALJ parsed Mr. Marshall's testimony, and thus not possible to conclude the ALJ's interpretation was rational. The ALJ found Mr. Marshall's testimony "fairly credible" but failed to detail whether all of the testimony was "fairly credible" or just partially "fairly credible." In discussing Mr. Marshall's testimony, the ALJ noted Ms. Marshall's inactivity "is not due to any physical or mental impairment supported by the record." This suggests the ALJ was rejecting Mr. Marshall's testimony about Ms. Marshall's "inactivity." However, as to other symptoms Mr. Marshall testified to such as Ms. Marshall's irritability, mood swings and threatening behavior, the ALJ did not discuss whether he was accepting or rejecting them.

Mr. Marshall's testimony regarding his wife's symptoms was competent evidence which the ALJ was required to take into account. If it was the ALJ's intent to accept Mr. Marshall's testimony about irritability, mood swings and threatening behavior, the ALJ erred because his decision did not take into account all of the symptoms. On the other hand, if it was the ALJ's intent to reject all of Mr. Marshall's testimony about his wife's symptoms, the ALJ erred by failing to give specific germane reasons for so doing. These errors were not harmless. Combined with Dr. Parker's opinions, the Court cannot confidently say no reasonable ALJ, when not making the same error as the ALJ, could have reached a different disability determination. On remand, the ALJ should reevaluate the testimony of Mr. Marshall.

**D.      Adequate development of the record**

The ALJ gave great weight to the opinions of examining doctor Wayne Dees, Psy.D., and several reviewing DDS doctors. Tr. 17-18. Ms. Marshall argues the ALJ erred by failing to

REPORT AND RECOMMENDATION - 10

obtain all of Ms. Marshall's DSHS records for these doctors to consider in rendering their opinions. Dkt. 12 at 13. The Commissioner does not dispute Ms. Marshall's contention that the DSHS records were not provided. The Commissioner, however, argues the ALJ had no duty to supplement the record because the reports of Dr. Dees and the reviewing doctors were not ambiguous, and Dr. Dees performed his own evaluation that was valid notwithstanding the fact he lacked all of Ms. Marshall's records. Dkt. 14 at 16-18. These arguments fail to address an ALJ's duty to supplement the record when a medical source's report "does not contain all the necessary information" as is obviously the case here.[4] The function of a reviewing doctor is to render an opinion based on a review of all relevant medical evidence. A non-treating examining doctor renders an opinion after examining a claimant just once. As such, a review of the claimant's medical records is an inherent part of a non-treating examining doctor's evaluation. In this case for instance, Dr. Dees's evaluation noted the records he reviewed and summarized Ms. Marshall's medical history based in part on those records. Tr. 227-28. Hence, one would be hard pressed to justify reliance on a reviewing or examining doctor's report that was prepared without the benefit of all relevant medical records.

Accordingly, the Court concludes the ALJ erred in failing to provide Dr. Dees and the examining doctors all of Ms. Marshall's medical records. On remand, if the ALJ seeks to rely on the opinions of an examining or reviewing doctor, the ALJ should ensure that those opinions are based on all the necessary information, including all relevant medical records.

---

[4] *See* 20 C.F.R. § 404.1512(e)(1) (providing that when evidence received from medical source is inadequate to determine whether a claimant is disabled, that source will be re-contacted to seek additional evidence or clarification, but only when that source's report "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); see also 20 C.F.R. § 416.912(e)(1).

REPORT AND RECOMMENDATION - 11

**D.     The ALJ's residual functional capacity assessment**

As discussed above, the ALJ's errors noted above require the matter be remanded for further proceedings. Accordingly, on remand, after properly evaluating the medical evidence, the ALJ should also reevaluate Ms. Marshall's RFC, and as appropriate incorporate all functional limitations in any hypothetical question posed to a vocational expert.

**CONCLUSION**

For the foregoing reasons, the Court recommends the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should (1) reevaluate the medical opinions of Dr. Parker; (2) reevaluate Mr. Melvin Marshall's lay testimony; (3) if the ALJ seeks to rely on the opinions of an examining or reviewing doctor, the ALJ should ensure that those opinions are based on all the necessary information, including all relevant medical records; and (4) and reevaluate, as necessary, Ms. Marshall's RFC before proceeding to steps four and five. A proposed order accompanies this Report and Recommendation.

Objections, if any to this Report and Recommendation must be filed and served no later than **May 29, 2012**. If no objections are filed, the matter will be ready for the Court's consideration on **June 1, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses

///

///

///

shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 15th day of May, 2012.

/s/ Brian A. Tsuchida  
BRIAN A. TSUCHIDA  
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13